IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

JOEL SHANE PETHEL,            )
                              )
        Petitioner,           )
                              )
v.                            )   Case No. 20-CV-0379-JED-CDL
                              )
SCOTT CROW,                   )
                              )
        Respondent.           )

**OPINION AND ORDER**

Petitioner Joel Shane Pethel, a state inmate appearing *pro se*,[1] brings this federal habeas action to challenge his state custody under the judgment and sentence entered against him in the District Court of Tulsa County, Case No. CF-2001-1098. Respondent Scott Crow moves to dismiss Pethel's 28 U.S.C. § 2254 petition for writ of habeas corpus (Doc. 1), alleging that Pethel failed to file the petition within 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations. Having considered the petition, Crow's motion to dismiss (Doc. 9) and brief in support (Doc. 10), and Pethel's response (Doc. 14), the Court finds that the petition was not timely filed. The Court therefore grants Crow's motion and dismisses the petition, with prejudice, as barred by § 2244(d)(1)'s one-year statute of limitations.

I.    **Factual and procedural background**

In the early morning hours of February 18, 2001, Harry and Teresa Hye, residents of Glenpool, Oklahoma, were shot to death and their house burned to the ground. Their adopted daughter, Cenessa Tackett, was also shot but survived and managed to escape the burning house. Tackett soon identified two perpetrators: her former boyfriend, Michael Browning, and another man named Shane Pethel.

---

[1] Because Pethel appears *pro se*, the Court liberally construes his pleadings. *Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009).

*Browning v. Trammell*, 717 F.3d 1092, 1095 (10th Cir. 2013).[2] On February 23, 2001, the State of Oklahoma charged Pethel and Browning with two counts of first-degree murder, shooting with intent to kill, first-degree arson, and three counts of robbery with a firearm. Doc. 10-2, at 6-9. The State sought the death penalty as to both defendants, and the trial court severed their cases for trial. Doc. 10-2, at 26-30.

> Pretrial proceedings in th[e criminal] case took nearly two years. About halfway through that process, Tackett's attorney (for unknown reasons) faxed two psychiatric reports to the prosecution.
>
> The first report, dated October 29, 2001, summarized a psychiatrist's conclusions after five recent visits with Tackett beginning on October 4, 2001—about eight months after the crime. According to the report, Tackett displayed "magical thinking" and a "blurring of reality and fantasy."
>
> The second report, dated November 26, 2001, contained even more disturbing information. It described Tackett as manipulative, grandiose, egocentric, and stated that she typically projected blame onto others. The report noted memory deficits as well. It described Tackett as a "code type ... rarely seen except in inpatient facilities." Most strikingly, according to the report, "*An assaultive, combative, or even homicidal potential must be carefully considered*" (emphasis in original).
>
> When the prosecution received these reports, it revealed their existence but not their contents to the defense.

*Browning*, 717 F.3d at 1095 (footnote omitted). Before trial, Pethel and Browning each filed a separate motion to compel the State to produce Tackett's mental health records. Doc. 10-2, at 25, 27; Doc. 10-3, at 3. The trial court denied Browning's motion on April 25, 2002, and ordered Tackett's mental health records sealed. Doc. 10-3, at 3. It is not clear if the trial court issued a separate ruling on Pethel's motion to compel, but Pethel's trial counsel believes the trial court also denied Pethel's motion. Doc. 10-3, at 3; *see also* Doc. 1, Pet., at 25-26 (Tyner Aff.).

---

[2] Both parties refer in their pleadings to decisions involving Pethel's co-defendant, Michael Browning, namely, *Browning v. Trammell*, 717 F.3d 1092 (10th Cir. 2013), and *Browning v. Workman*, No. 07-CV-16-TCK-PJC, 2011 WL 2604744 (N.D. Okla. 2011). Both decisions are also included in the record (Doc. 10-6) as Pethel filed them with his postconviction appeal.

Browning's jury trial began in January 2003. Doc. 10-2, at 39; Doc. 10-3, at 3. Tackett testified at trial as the State's primary witness, and the jury found Browning guilty as to two counts of first-degree murder (counts one and two), shooting with intent to kill (count three), first-degree arson (count four) and robbery with a firearm (count five), and the trial court dismissed two robbery charges (counts six and seven). Doc. 10-2, at 8, 39. The jury recommended life sentences as to the convictions in counts one, two , three, and five, and a sentence of 35 years' imprisonment as to count four. Doc. 10-2, at 39-40. On February 7, 2003, following a separate penalty phase, the jury recommended the death penalty as to each of Browning's murder convictions. Doc. 10-2, at 41. The trial court imposed two death sentences (counts one and two), two life sentences (counts three and five), and 35 years' imprisonment (count four). Doc. 10-6, at 17.

On February 11, 2003, four days after the jury recommended the death penalty for Browning, Pethel waived his right to a trial and pleaded guilty as to two counts of first-degree murder (counts one and two), shooting with intent to kill (count three), first-degree arson (count four), and robbery with a firearm (count five), and, on the State's request, the trial court dismissed two robbery charges (counts six and seven). Doc. 10-2, at 42. Pursuant to the plea agreement, the trial court imposed two life sentences, without the possibility of parole, (counts one and two), two life sentences (counts three and five), and 35 years' imprisonment (count four), with all sentences to be served consecutively. Doc. 10-2, at 42. Pethel did not move to withdraw his guilty plea or otherwise appeal his convictions and sentences. Doc. 1, Pet., at 16; Doc. 10-7, at 2.

Browning, however, did challenge his convictions and sentences. On direct appeal, the Oklahoma Court of Appeals (OCCA) affirmed Browning's convictions and sentences as to counts one, two and three, but dismissed his convictions as to counts four and five. Doc. 10-6, at 17; *see Browning v. State*, 134 P.3d 816 (Okla. Crim. App. 2006). Browning twice sought postconviction

3

relief, and the OCCA denied relief both times. Doc. 10-6, at 17-18. Browning then sought federal habeas relief. In an opinion and order filed June 30, 2011, the federal district court granted a conditional writ of habeas corpus on Browning's claim that the State violated his Fourteenth Amendment right to due process, as interpreted in *Brady v. Maryland*, 373 U.S. 83 (1963), when it failed to produce Tackett's mental health records before trial. Doc. 10-6, at 19, 26; *see Browning v. Workman*, No. 07-CV-16-TCK-PJC, 2011 WL 2604744, at *3, 9 (N.D. Okla. 2011). The federal district court concluded that the sealed mental health records contained evidence that was "clearly both favorable impeachment and exculpatory evidence." *Browning*, 2011 WL 2604744, at *7.[3]

The United States Court of Appeals for the Tenth Circuit affirmed the federal district court's order in a published opinion filed May 6, 2013. *Browning*, 717 F.3d at 1094, 1108. The Tenth Circuit found it was "beyond question that [Tackett's mental health records] contain both exculpatory and impeaching evidence," found that the evidence was material, and concluded that *Brady* thus required the State to disclose the contents of those records before trial. *Browning*, 717 F.3d at 1105-08. Based on the Tenth Circuit's decision, Browning's convictions for first-degree murder and shooting with intent to kill were vacated and his case was set for a new trial. Doc. 10-2, at 64.

Browning's new trial commenced five years later, on May 7, 2018. Doc. 10-2, at 93. In late April 2018, before the new trial, the State obtained a writ of habeas corpus ad testificandum to secure Pethel's appearance at trial to testify as a State's witness. Doc. 10-2, at 92. Browning's new trial ended with a hung jury. Doc. 10-2, at 94. Following the trial, Pethel was returned to prison on May 14, 2018. Doc. 10-2, at 94. Over one year later, on August 12, 2019, Browning

---

[3] The federal district court noted that it reviewed Tackett's sealed mental health records and that "[n]either Browning nor his present or previous counsel had viewed these records at the time he filed his Habeas Petition." *Browning*, 2011 WL 2604744, at *4.

waived his right to a jury trial and, pursuant to a plea agreement with the State, pleaded no contest to two counts of second-degree murder (counts one and two) and shooting with intent to kill (count three). Doc. 10-2, at 102. The trial court sentenced Browning to 25 years' imprisonment for each conviction, with credit for time served, and ordered the sentences to be served concurrently. Doc. 10-2, at 102.

Meanwhile, on September 13, 2018, Pethel filed an application for postconviction relief in state district court, seeking leave to withdraw his guilty plea and file a certiorari appeal out of time, and an application for an evidentiary hearing. Doc. 10-3, at 1, 10; Doc. 10-4, at 1. Pethel alleged his request to withdraw his guilty plea was "based on newly discovered evidence which was previously unavailable to him," namely, Tackett's mental health records, "because the evidence had been *sealed* by the trial court." Doc. 10-3, at 1 (italics and underlining in original). He further alleged that because he was denied access to this evidence, his pleas were not knowing, voluntary and intelligent, that he was denied access to this evidence through no fault of his own, and that he was entitled to postconviction relief because the "[t]he State's refusal to turn over, and the Trial Court's refusal to order disclosure of Cenessa Tackett's mental health records, which were in the possession of the prosecution, deprived Pethel of his constitutional rights to access exculpatory evidence under the Due Process Clause of the Fourteenth Amendment and *Brady v. Maryland*, 373 U.S. 83." Doc. 10-3, at 1-2, 5 (full capitalization omitted).

The state district court denied Pethel's request for an evidentiary hearing, declined to recommend an out-of-time certiorari appeal, and denied his application for postconviction relief on October 25, 2018. Doc. 10-5, at 1, 3. The state district court found that Pethel failed to show he was denied his right to appeal through no fault of his own, and further found that the State was not required to provide impeachment evidence before entering plea negotiations with Pethel or

5

before he pleaded guilty. Doc. 10-5, at 3. Pethel filed a postconviction appeal, and the OCCA remanded the case for an evidentiary hearing, and a hearing was held on June 18, 2019. Doc. 10-7, OCCA Order, at 2. On October 4, 2019, the OCCA affirmed the denial of Pethel's request for an out-of-time appeal. Doc. 10-7, OCCA Order at 1, 4. Like the state district court, the OCCA found that Pethel failed to establish he was denied an appeal through no fault of his own. Doc. 10-7, OCCA Order, at 3. The OCCA alternatively rejected the *Brady* claim on the merits, stating, "[c]ontrary to [Pethel's] claim, the Constitution does not require the disclosure of witness impeachment information prior to the entry of a plea of guilty. *United States v. Ruiz*, 536 U.S. 622, 629, 122 S. Ct. 2450, 2455, 153 L. Ed. 2d 586 (2002)." Doc. 10-7, OCCA Order, at 3.

Pethel filed the instant federal habeas petition on July 15, 2020. Doc. 1, Pet., at 1, 15.[4] He identifies one ground for relief, claiming he was denied his Fourteenth Amendment right to due process, as interpreted in *Brady*, when the State failed to disclose Tackett's mental health records before he entered his guilty plea. Doc. 1, Pet., at 5. In support of this claim, Pethel alleges the

> [p]rosecution was in possession of mental health records of Cenessa Tackett, who was the key witness and the only thing linking Pethel to the crimes or crime scene. Pethel's defense attorneys [sic] filed a motion to compel and the trial courts denied and sealed the records months before any plea negotiations between Pethel and the State. His co-defendant was sentenced to two death sentences four days before Pethel entered guilty pleas, and co-defendant had convictions overturned due to the later disclosure of mental health records. Had Pethel had access to the mental health records he would not have entered into plea negotiations with the State, rather he would have proceeded to trial.

Doc. 1, Pet., at 5. Pethel further alleges he did not raise this issue through a timely certiorari appeal

---

[4] The Clerk of Court received the petition on July 31, 2020. Doc. 1, Pet., at 1. But Pethel declares, under penalty of perjury, that he placed the petition in the prison's legal mailing system, with the correct postage affixed, on July 15, 2020. Doc. 1, Pet., at 15. Applying the prison mailbox rule, the Court thus deems the petition filed on July 15, 2020. *See Price v. Philpot*, 420 F.3d 1158, 1165 (10th Cir. 2005); Rule 3(d), *Rules Governing Section 2254 Cases in the United States District Courts*.

6

because trial counsel informed him that he could not appeal because he "took a plea agreement." Doc. 1, Pet., at 6. In his request for relief, Pethel asks to be "[r]e-sentenced same as Michael A. Browning, or at the least allowed to withdraw [his] plea." Doc. 1, Pet., at 15.

## II. Discussion

Crow moves to dismiss the petition as barred by the applicable statute of limitations. Docs. 9, 10. Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a state prisoner seeking federal habeas relief from a state-court judgment through a § 2254 petition for writ of habeas corpus generally has one year to file a federal habeas petition. The one-year limitation period commences on the latest of four dates, only three of which are relevant here: "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A), "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action," *id.* § 2244(d)(1)(B), and "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," *id.* § 2244(d)(1)(D).[5]

Regardless of when the one-year limitation period commences, that period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). However, to obtain the benefit of statutory tolling, the petitioner must file the application for state postconviction relief or other collateral review (1) in accordance with applicable state laws and

---

[5] The limitation period may also begin on "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," 28 U.S.C. § 2244(d)(1)(C). Even liberally construing the petition and response, the Court does not read either as suggesting that this provision applies.

7

procedural rules, *Artuz v. Bennett*, 531 U.S. 4, 8 (2000), and (2) before the applicable AEDPA one-year limitation period expires, *Clark v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2006). In addition, because the AEDPA's one-year limitation period is not jurisdictional, federal courts have discretion to toll the limitation period for equitable reasons, *Holland v. Florida*, 560 U.S. 631, 645 (2010), and to excuse non-compliance with the statute of limitations if the petitioner makes "a credible showing of actual innocence," *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).

For several reasons, the Court agrees with Crow that the petition should be dismissed as barred by the one-year statute of limitations.

### A.   The petition is untimely under § 2244(d)(1)(A).

First, the petition is untimely under § 2244(d)(1)(A), and Pethel does not appear to argue otherwise. Section 2244(d)(1)(A) requires a state prisoner to file his or her federal habeas petition within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Because Pethel pleaded guilty, his only path to direct review under Oklahoma law was through a certiorari appeal. *Clayton v. Jones*, 700 F.3d 435, 441 (10th Cir. 2012). Pethel thus had 10 days from February 11, 2003, the date of his sentencing hearing, to file a motion to withdraw his plea and request a hearing on that motion if he intended to pursue a certiorari appeal. *See Clayton*, 700 F.3d at 441 (discussing Oklahoma law and noting that an "application to withdraw guilty plea and the evidentiary hearing are both necessary and critical steps in securing [a certiorari] appeal" (quoting *Randall v. State*, 861 P.2d 314, 316 (Okla. Crim. App. 1993))). Pethel did not move to withdraw his plea, making his state-court judgment final on February 21, 2003. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (explaining that judgment becomes final when the time for seeking direct review expires). Pethel's one-year limitation period under § 2244(d)(1)(A) commenced the next day, February 22,

8

2003, and, absent any statutory tolling events, that limitation period expired on February 23, 2004.[6] *See Harris v. Dinwiddie*, 642 F.3d 902, 906 n.6 (10th Cir. 2011) (discussing calculation of one-year limitation period). Pethel is not entitled to statutory tolling for this one-year limitation period because he did not file his first application for postconviction relief until September 13, 2018, more than 14 years after the one-year limitation period expired. *Clark*, 468 F.3d at 714. The petition is therefore untimely under § 2244(d)(1)(A).

      **B.**      **The petition is untimely under § 2244(d)(1)(B).**

Second, the petition is untimely under § 2244(d)(1)(B), even with the benefit of statutory tolling. Under that provision, the one-year limitation period begins on "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). Pethel does not expressly invoke this provision, but the Court finds it reasonable to read the petition and response as suggesting that this provision may apply. Specifically, Pethel asserts that his *Brady* claim is based on newly discovered evidence that was previously unavailable because the prosecutor failed to disclose the contents of Tackett's mental health records and the trial court improperly sealed those same records before he entered his guilty plea. Doc. 1, Pet., at 5, 20-24; Doc. 14, Resp., at 3. Crow appears to contend that the petition is untimely under § 2244(d)(1)(B) because "any purported State impediment was removed when [Pethel] actually became aware of the contents of the mental health records." Doc. 10, Resp't's Br., at 8.

The Court agrees. Even if the Court assumes without deciding that the alleged *Brady*

---

[6] The one-year limitation period expired on February 22, 2004. However, because that date fell on a Sunday, Pethel had until the following Monday, February 23, 2004, to file timely habeas petition. Fed. R. Civ. P. 6(a)(1)(C).

9

violation constitutes an unconstitutional, state-created impediment and that the impediment prevented Pethel from filing a federal habeas action, the petition is untimely. Pethel's own allegations suggest the impediment was removed on April 26, 2018, when Pethel first learned that Browning received a new trial on the basis of the same alleged *Brady* violation, namely, the State's failure to disclose the contents of Tackett's sealed mental health records before trial. Doc. 1, Pet., at 16-17; Doc. 14, Resp., at 1. Applying § 2244(d)(1)(B), Pethel's one-year limitation period commenced the next day, on April 27, 2018, and ran for 139 days before he filed his first application for postconviction relief in state district court, on September 13, 2018. That application was pending in state court, and the limitation period was thus tolled under § 2244(d)(2), until the OCCA affirmed the denial of his application for postconviction relief on October 4, 2019. When the one-year limitation period began to run again on October 5, 2019, Pethel had 226 days remaining to file a timely federal habeas petition asserting the *Brady* claim. He filed the instant petition on July 15, 2020: 284 days after the OCCA denied relief, and 58 days after his one-year limitation period expired.

Under these facts, even assuming the State's alleged *Brady* violation created an unconstitutional impediment that prevented Pethel from filing a petition asserting his *Brady* claim, and even with the benefit of statutory tolling, Pethel failed to file the petition within the one-year limitation period provided by § 2244(d)(1)(B).

### C.     The petition is untimely under § 2244(d)(1)(D).

Third, and similarly, the petition is untimely under § 2244(d)(1)(D). Section 2244(d)(1)(D) provides that the one-year limitation period begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). As just discussed, Pethel characterizes his *Brady* claim as

a claim based on "newly discovered evidence" and appears to contend that § 2244(d)(1)(D) provides the start date for his one-year limitation period because he first became "aware," on April 26, 2018, that Browning obtained federal habeas relief and a new jury trial based on the State's failure to disclose the contents of Tackett's mental health records. Doc. 1, Pet., at 16-17; Doc. 14, Resp., at 1. Crow contends that § 2244(d)(1)(D) does not provide a later commencement date because a reasonably diligent petitioner could have discovered the factual predicate for the *Brady* claim, at the very latest, in May 2013 when the Tenth Circuit issued its opinion in *Browning v. Trammell*. Doc. 10, Resp't's Br., at 8.

The Court finds it unnecessary to address Crow's contention regarding when a reasonably diligent petitioner could have discovered the alleged *Brady* violation. Even assuming without deciding that § 2244(d)(1)(D) provides a later commencement date for Pethel's one-year limitation period, the petition is untimely. As previously stated, Pethel alleges that he first discovered the factual predicate of his *Brady* claim on April 26, 2018. Accepting that allegation as true, Pethel's one-year limitation period commenced the next day, on April 27, 2018, and, absent statutory tolling, would have expired on April 27, 2019. Statutory tolling applies to this one-year limitation period but does not render the petition timely. As just discussed, Pethel filed his application for postconviction relief in state district court on September 13, 2018, after 139 days of his one-year limitation period passed. That application was pending until October 4, 2019, when the OCCA affirmed the denial of his application for postconviction relief. As of October 5, 2019, when the tolling event ended, Pethel had 226 days to file a timely federal habeas petition asserting the *Brady* claim. He filed the instant petition on July 15, 2020: 284 days after the OCCA denied relief, and 58 days after his one-year limitation period expired. Thus, even applying § 2244(d)(1)(D) and Pethel's alternative commencement date of April 26, 2018, and giving Pethel the benefit of

statutory tolling, the petition is untimely.

### D. Pethel has not shown that equitable tolling or an equitable exception applies.

Fourth and finally, Pethel fails to demonstrate either that his circumstances warrant equitable tolling of the one-year limitation period or that the untimely filing can be excused by applying *Perkins*' equitable exception.

#### 1. Equitable tolling

To obtain equitable tolling, a habeas petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing" of the federal habeas petition. *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). This is a "strong burden" that requires the petitioner "to show specific facts to support his claim of extraordinary circumstances and due diligence." *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quoting *Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008)). While equitable tolling is available to permit review of untimely habeas claims, it is "a rare remedy to be applied in unusual circumstances." *Al-Yousif v. Trani*, 779 F.3d 1173, 1179 (10th Cir. 2015) (quoting *Yang*, 525 F.3d at 929).

In response to Crow's argument that Pethel fails to show any circumstances or the requisite diligence to support equitable tolling, Pethel reasserts that he could not have raised the *Brady* claim any sooner than he did because the State withheld the evidence that he claims was "critical to [his] ability to impeach Ms. Tackett." Doc. 14, Resp., at 16-17, 20. To the extent the Court construes this assertion as an argument in favor of equitable tolling, the Court rejects that argument. As previously discussed, Pethel alleges he discovered the alleged *Brady* violation at the end of April 2018. Following that discovery, Pethel permitted 139 days, or nearly five months, to pass before presenting the *Brady* claim in state district court. After the OCCA affirmed the denial of his

application for postconviction relief at the beginning of October 2019, Pethel permitted an additional 284 days, or about nine months, to pass before filing the instant federal habeas petition. Even adopting Pethel's view that the alleged *Brady* violation itself constitutes an extraordinary circumstance that delayed his ability to seek federal habeas relief, Pethel fails to show that he acted with reasonable diligence after he discovered the alleged *Brady* violation. The Court thus finds that Pethel has not demonstrated that equitable tolling of the one-year limitation period is warranted. *See Burger v. Scott*, 317 F.3d 1133, 1141 (10th Cir. 2003) (noting that, in this circuit, courts "generally decline[] to apply equitable tolling when it is facially clear from the timing of the state and federal petitions that the petitioner did not diligently pursue his claims").

Moreover, while Pethel does not clearly identify any other circumstances that might support equitable tolling, the Court finds some evidence suggesting that Pethel's delayed filing may be attributable, at least in part, to representations made by his postconviction counsel. With his petition, Pethel submitted a letter he received from postconviction counsel regarding the filing of a federal habeas petition. In the letter, dated October 22, 2019, counsel states, "There are time limits on federal habeas, but generally, it is 1 year after the district court denies relief, and that time is stayed pending the post-conviction appeal to the Court of Criminal Appeals. So, you have plenty of time." Doc. 1, Pet., at 27. The first statement is incorrect because it fails to recognize the four specific trigger dates found in § 2244(d)(1), none of which provides that the one-year limitation period begins on the date the state district court denies relief, and because it misstates how § 2244(d)(2)'s statutory tolling provision works. To the extent Pethel may have understood counsel's statement to suggest that he had one year from October 4, 2019, to file a timely federal habeas petition, that could explain why Pethel indicated in his petition that it had been timely filed on July 15, 2020. Doc. 1, Pet., at 13-14. But Pethel does not appear to argue that equitable tolling

13

is warranted because he relied on postconviction counsel's misstatement regarding the one-year limitation period. And, even if he made that argument, postconviction counsel's misstatement, standing alone, evidences only simple negligence, not egregious misconduct that might support equitable tolling of the one-year limitation period. *See Holland*, 560 U.S. at 652 (suggesting that an attorney's misconduct that results in missing or miscalculating a filing deadline may constitute "simple negligence" but may not support equitable tolling); *Fleming v. Evans*, 481 F.3d 1249, 1256 (10th Cir. 2007) (holding "that sufficiently egregious misconduct on the part of a habeas petitioner's counsel may justify equitable tolling of the AEDPA limitations period").

Based on the foregoing, the Court finds no basis to support equitable tolling of the one-year limitation period.

    **2.    Actual-innocence exception**

Even when equitable tolling is not warranted, courts may excuse noncompliance with the AEDPA's one-year statute of limitations if the petitioner makes "a credible showing of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). *Perkins'* equitable exception to the one-year limitation period, however, "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Perkins*, 569 U.S. at 395 (alteration in original) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Again, it is not clear from the petition or response whether Pethel seeks application of this equitable exception to excuse his untimely filing. However, in his response, Pethel asserts that his "claim of innocence relied heavily on proving that Ms. Tackett had lied about his role in the events that led to the deaths of Mr. and Mrs. Hye, and most importantly that she lied about him being the shooter." Doc. 14, Resp., at 2.

    Even if the Court construes Pethel's response as asserting an actual-innocence claim, the

14

Court finds the claim is not sufficiently credible for two reasons. First, as Crow argues, it is particularly difficult for a habeas petitioner to assert a credible claim of actual innocence when that petitioner stood before the trial court and swore under oath that he was guilty of committing the crimes with which he had been charged. Doc. 10, Resp't's Br., at 10; *see Browning*, 717 F.3d at 1099-1100 (detailing the statements Pethel made at his plea hearing). As summarized by the Tenth Circuit,

> Contrary to Tackett's testimony that Pethel himself had been the shooter, Pethel stated at his change-of-plea hearing that Browning shot Tackett and the Hyes. But Pethel otherwise corroborated most of Tackett's story, including the perceived motive. Pethel claimed that Browning came to his house four days before the crime and explained that he wanted to "get [Tackett] out of the picture" because Browning's new girlfriend supposedly stated that she would leave Browning if a paternity test identified him as the father of Tackett's baby. R., Feb. 11, 2003 Hr'g Tr. at 14. Browning also worried that the baby would inherit a disease that runs in Tackett's family, thus increasing the likely child support costs. Pethel nowhere explained his own motive for participating in the murders, although his account implies he would get to keep the property stolen from the Hyes.

*Browning*, 717 F.3d at 1099-1100. Regardless of whether Pethel might have been able to use Tackett's mental health records to create reasonable doubt about Tackett's identification of Pethel as the shooter, had he gone to trial, Pethel's admissions at the plea hearing regarding his involvement in the crimes undermine his assertion that the contents of those records could prove his actual innocence. The Court is therefore not convinced "that, in light of the new evidence, no juror, acting reasonably, would have voted to find [Pethel] guilty beyond a reasonable doubt" had he chosen to proceed with a jury trial. *Schlup*, 513 U.S. at 329.

Further, in assessing the credibility of an actual-innocence claim, a court may consider the timing of the habeas petition. *Perkins*, 569 U.S. at 386. Here, Pethel rested on his guilty plea for over 15 years before asserting that he could have supported his "claim of innocence" if only he had access to the contents of Tackett's mental health records that were withheld from him before he entered his guilty plea. Doc. 14, Resp. at 2. But, like Browning, Pethel knew before trial that

the contents of Tackett's records had been sealed by the trial court. Even without those records, Pethel had personal knowledge regarding his roles in the crimes he committed against Tackett and the Hyes, and he asserted at his plea hearing in 2003 that Browning shot all three victims. Like his guilty plea, the recent timing of his assertion of actual innocence tends to undermine that assertion.

On the record presented, the Court concludes this is not one of the "rare" cases where *Perkins*' equitable exception applies.

### III. Conclusion

Pethel failed to file his petition for writ of habeas corpus within the one-year limitation period set forth in 28 U.S.C. § 2244(d)(1)(A), and Pethel has not shown that the petition is timely even if the Court applies a later commencement date for the one-year limitation period as provided in either 28 U.S.C. § 2244(d)(1)(B) or 28 U.S.C. § 2244(d)(1)(D). Further, Pethel has not demonstrated either that equitable tolling is warranted or that the Court should apply *Perkins*' equitable exception to excuse the untimeliness of the petition. The Court therefore grants Crow's dismissal motion and dismisses the petition, with prejudice, as barred by the applicable one-year statute of limitations.

### IV. Certificate of appealability

As a final matter, Rule 11(a), *Rules Governing Section 2254 Cases in the United States District Courts*, requires a district court to "issue or deny a certificate of appealability when it enters a final order adverse to the [habeas] applicant." The court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When, as here, the court dismisses a habeas petition on procedural grounds, the applicant must make this showing by demonstrating both "[1] that jurists of reason

would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (stating that a habeas petitioner can obtain a certificate of appealability "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further").

Here, the Court finds that reasonable jurists would not debate the Court's determination that the habeas petition is untimely under all three relevant provisions of 28 U.S.C. § 2244(d)(1) discussed herein. But the Court finds that reasonable jurists might debate the more nebulous question of whether equitable tolling is warranted under Pethel's particular circumstances. In addition, the Court finds that reasonable jurists could debate whether Pethel's *Brady* claim—asserting that his plea was rendered involuntary when the the State withheld material impeachment and exculpatory evidence—"deserve[s] encouragement to proceed further," particularly in light of the fact that Pethel's co-defendant obtained federal habeas relief on the same alleged *Brady* violation. *Compare Ruiz*, 536 U.S. at 633 (concluding "that the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant"), *with United States v. Ellsbury*, 528 F. App'x 856, 858 (10th Cir. 2013) (unpublished)[7] (citing *Ruiz* and acknowledging that "the prosecution is not required 'to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant,'" but also citing Tenth Circuit precedent for the proposition that "with respect to non-impeachment

---

[7] The Court cites this unpublished decision as persuasive authority. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

evidence, a movant challenging the voluntariness of his plea must show 'that but for the failure to produce such information [he] would not have entered the plea but instead would have insisted on going to trial'" (first quoting *Ruiz*, 536 U.S. at 633; then quoting *United States v. Walters*, 269 F.3d 1207, 1214 (10th Cir. 2001))).

Granted, in the end, Pethel may not be able to overcome the untimely filing of his petition or be able to show that he is entitled to federal habeas relief on his *Brady* claim. But a court "should not decline" to issue a certificate of appealability "merely because it believes the applicant will not demonstrate an entitlement to relief." *Miller-El*, 537 U.S. at 337. The Court therefore grants a certificate of appealability on the issue of whether Pethel's particular circumstances warrant equitable tolling of the one-year limitation period.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Respondent's motion to dismiss (Doc. 9) is **granted**.

2. The petition for writ of habeas corpus (Doc. 1) is **dismissed with prejudice** as barred by 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations.

3. A certificate of appealability is **granted** on the issue of whether Pethel's circumstances warrant equitable tolling of the one-year limitation period.

4. A separate judgment shall be entered in this matter.

ORDERED this 15th day of June, 2021.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT